**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT, APC
433 G. Street, Suite 202
San Diego, California 92101
Telephone: (619) 652-9970
Facsimile: (619) 652-9964
email: timscottlaw@cox.net

Attorneys for MODESTA LUISA MAGANA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08cr1166-W |
| Plaintiff, | ) | Date: 6/24/08 |
| | ) | Time: 9:00 a.m. |
| v. | ) | |
| MODESTA LUISA MAGANA | ) | **NOTICE OF MOTIONS TO: DISMISS INDICTMENT; SUPRESS STATEMENTS; SUPPRESS ILLEGAL FRUITS OF ARREST; COMPEL DISCOVERY; SEVER DEFENDANTS SEVER COUNTS; JOINDER; & LEAVE TO FILE FURTHER MOTIONS.** |
| Defendant. | ) | |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY, AND JOSEPH J.M. ORABONA, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on Tuesday, June 24, 2008, before the Honorable Thomas J. Whelan, at 9:00 a.m., or as soon thereafter as counsel may heard, the defendant, Modesta Luisa Magana by and through counsel, Timothy A. Scott, will ask this Court to issue an order granting the motions listed below.

///

///

///

///

///

<u>MOTIONS</u>

The defendant, Modesta Luisa Magana, by and through counsel, Timothy A. Scott, asks this Court to pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes and local rules for an order to:

1) Dismiss the Indictment;

2) Suppress Statements;

3) Suppress the Illegal Fruits of her Arrest;

4) Compel Discovery;

5) Sever Co-Defendants;

6) Sever Counts;

7) Joinder; and

8) Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may be made available to this Court prior to or during the hearing of these motions.

Dated: June 11, 2008

Respectfully submitted,

*s/ Timothy A. Scott*

**TIMOTHY A. SCOTT**
Attorneys for Modesta Luisa Magana

**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT, APC
433 G. Street, Suite 202
San Diego, California 92101
Telephone: (619) 652-9970
Facsimile: (619) 652-9964
email: timscottlaw@cox.net

Attorneys for MODESTA LUISA MAGANA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MODESTA LUISA MAGANA<br>Defendant. | Case No. 08cr1166-W<br>Date: 6/24/08<br>Time: 9:00 a.m.<br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |

## I.

## STATEMENT OF FACTS[1]

On May 8, 2008 Modesta Luisa Magana, a United States Citizen, was traveling eastbound on State Route 94 approximately 1/10 mile west of Ribbonwood Road. Ms. Magana was sitting in the passenger seat of a 2003 Chevrolet Malibu. The driver, Juan Jesus Limon reportedly consented to a search of the trunk wherein agents discovered packages containing

1 This statement of facts comes from discovery disclosed by the government to date. Ms. Magana does not stipulate to its accuracy, and reserves the right to take a contrary position at a later date, depending on the state of the evidence. Further the facts set out below are supported by the declaration of Ms. Magana (Exhibit A). Ms. Magana's declaration statements may not be used against her at trial. See Simmons v. United States, 390 U.S. 377, 394 (1968).) Unless the government's opposition to the motions filed herein is accompanied by an appropriate declaration, the Court should accept the facts alleged herein as undisputed, and grant Ms. Magana's motions without an evidentiary hearing. See Criminal Local Rule 47.g.1.

what they believed to be marijuana. Allegedly the packages found in the vehicle contained 47.10 kilograms (103.61 pounds) of marijuana. Further search led to the discovery of an additional ten packages found in the brush allegedly weighing 105.40 kilograms (231.89) of marijuana. Agents handcuffed Ms. Magana, Mr. Limon, and Mr. Montes [the rear passenger] and transported them to Campo station for processing. They then questioned her about the offense after administering *Miranda* warnings despite Ms. Magana's invocation of her constitutional right to have counsel present during such questioning.

To the best of her recollection, on May 8, 2008, after being arrested and questioned without counsel present, Ms. Magana was taken to the Las Colinas Detention Facility in Santee, where she was held for several days without being taken to court, having a lawyer appointed, meeting with a lawyer, or being informed what was happening.

It was not until the following Tuesday, May 13th, that Ms. Magana was first taken to court, ostensibly for the purposes of arraignment. That day, Ms. Magana was not arraigned. She did not have her matter called before a judge and she was not formally advised of the charges, if any, being brought against her. Ms. Magana sat in the holding "tank" all day to no avail. The correctional officers who facilitated her transportation between the El Cajon courthouse and Las Colinas told her it was a "dry run," i.e., practice for the real thing.

On May 14th, Ms. Magana was told to pack her things and get ready to go. Under the false impression that she was going to be released, Ms. Magana prepared herself mentally and physically for her departure. Ms. Magana was indeed released that day; she was released to the custody of federal authorities.

At this point, Ms. Magana had still never been shown a warrant for her arrest, a warrant to seize her belongings, or a probable cause statement to justify her arrest and detention by the United States Border Patrol. The first time she went to court and was addressed by a judge following her arrest was her federal court appearance on May 14, 2008. At that time, the undersigned attorney was appointed through the CJA panel as the attorney of record. May 14th, 2008 was nearly one week after her initial arrest. Four court days (six calendar) elapsed before Ms. Magana: 1) was advised of the charges against her, 2) advised of her constitutional rights, 3)

was addressed by a judge informing her of those rights, 4) was provided her constitutional right to counsel, and 5) actually spoke with a individual (her attorney) that was not a state or federal law enforcement authority. These motions follow.

## II.

## DISCUSSION

### A. The Court Should Dismiss the Indictment Under *County of Riverside*.

Assuming the arrest was warrantless, but the Court finds it was nevertheless lawful, United States Border Patrol officials nevertheless violated Ms. Magana's constitutional rights by failing to submit the arrest for a probable cause determination by a judge.

In Gerstein v. Pugh, 420 U.S. 103, 125 (1975), the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended detention following a warrantless arrest. Subsequently, in County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), the Supreme Court held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." However, the Court emphasized that delays less than 48 hours may be held unreasonable:

> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.

McLaughlin, 500 U.S. at 56. The 48-hour rule is thus not dispositive of whether a delay is reasonable. Rather, its significance is that it shifts the burden to the government "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57. In considering this question, the Court should be aware "that it is improper to delay arraignment in order to investigate the suspect's participation in additional crimes." Anderson v. Calderon, 232 F.3d 1053, 1070 (9th Cir. 2000).

Ms. Magana was arrested on the morning of May 8th, and was held at Las Colinas Detention Facility until May 14th. According to the jail records, she was in the "custody" of the

San Diego police until at least May 13th, and arguably was really in San Diego police custody -- due to ICE collusion -- until May 14th. Regardless, Ms. Magana was in custody for at least six days without any probable cause determination being passed on by a judge, and it is apparent that was motivated by the San Diego police's desire to hold her because she, or someone allegedly arrested with her, was being investigated for the alleged offenses committed in Count 1 of the superseding indictment.

Given the circumstances, the Court should suppress any statements Ms. Magana made to San Diego police, Federal Border Patrol Agents, or any other law enforcement personnel. See id. at 1070-71 (holding that suppression is appropriate remedy for violation of Gerstein rule).

**B. The Court Should Suppress Statements as an Alternative Remedy.**

Ms. Magana moves to dismiss and/or suppress based on the following violations by federal officials: (1) warrantless arrest; (2) failure to submit arrest to magistrate judge for probable cause determination; and (3) unnecessary delay in first court appearance.

**1. Warrantless Arrest**

Ms. Magana has been provided with no discovery indicating there was a warrant for her arrest by federal agents, nor is there any apparent exigency for failing to get a warrant, considering she was in the County jail. Accordingly, the Court should suppress the fruits of the federal government's warrantless arrest.

**2. Failure To Promptly Submit Probable Cause Determination To Magistrate Judge**

Federal officials also violated the Gerstein rule. As indicated above, in obvious collusion with San Diego police, on May 8th, federal agents had Ms. Magana booked "into" the Las Colinas Detention facility. Yet the probable cause determination was not submitted to this Court until May 14th, 2008. This is well beyond the forty-eight hour rule set out in County of Riverside. Accordingly, any statements Ms. Magana made to federal officials should be suppressed.

**3. Delay In Initial Appearance**

The delay in Ms. Magana's initial appearance in federal court was also unlawful under Rule 5 of the Federal Rules of Criminal Procedure.

Pursuant to Federal Rule of Criminal Procedure 5(a), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ."

To determine if there is a Rule 5(a) violation, the Ninth Circuit has articulated two different tests. See Van Poyck, 77 F.3d at 288-89 (noting the intra-circuit conflict). "In one line of cases, [the Ninth Circuit has] looked to the reasonableness of the delay; if it is reasonable, the statement is admissible. In another line, [the Ninth Circuit has] looked to public policy concerns such as discouraging officers from unnecessarily delaying arraignments, preventing admission of involuntary confessions, and encouraging early processing of defendants; if public policy favors admission, the statement is admissible." See id. at 289.

The Ninth Circuit has avoided choosing which of these two tests is the law of the Circuit. Under either test, Ms. Magana's statements to federal officials should be suppressed: the reason for the delay was because federal officials were working in collusion with the San Diego police to hold Ms. Magana while her co-defendants were being investigated for the unrelated smuggling offenses. Cf. United States v. Wilson, 838 F.2d 1081, 1085 (9th Cir. 1988) ("The desire of the officers to complete the interrogation is, perhaps, the most unreasonable excuse under §3501(c)"); see also United States v. Alvarez-Sanchez, 975 F.2d 1396, 1405 (9th Cir. 1992) (same), rev'd on other grounds, 511 U.S. 350 (1994).

**C. Ms. Magana moves to suppress both her pre-*Miranda* statements and the statements that allegedly followed *Miranda* advisals.**

Individuals possess the right to be informed, prior to custodial interrogation, "that [they have] the right to the presence of an attorney, and that if [they] cannot afford an attorney one will be appointed for [them] prior to any questioning if [they] so desire [ ]." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "What Miranda requires 'is meaningful advice to the unlettered and unlearned in language which [they] can comprehend and on which [they] can knowingly act.'" *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002) *(quoting United States v.* Connell, *869 F.2d 1349, 1351* (9th Cir. 1989). "The warning must be clear and not susceptible

to equivocation." *San Juan-Cruz*, 314 F.3d at 387. Of course, the government must also demonstrate that any statements given were voluntary in nature, and that they complied with 18 U.S.C. § 3501 as well.

Ms. Magana moves to suppress one set of statements here. First, she was handcuffed, detained, and questioned in a Campo Border Patrol Station office. Ms. Magana clearly stated that she understood her Miranda Rights via a DEA-13A Card and that she was not sure if she should talk to the agents. When the agents demanded a "yes" or "no" answer in response to her willingness to speak with them, Ms. Magana explicitly and unequivocally stated "no." Whatever statements she gave to agents must be suppressed. The government bears the burden of demonstrating that they complied with *Miranda*, that the statements were voluntary, and that Ms. Magana's statements were not tainted by the initial *Miranda* violation as well. This statement should ultimately be suppressed.

**D. Border Patrol's Arrest of Ms. Magana was Illegal, and all Fruits of it Must be Suppressed.**

**1. Border Patrol Agents Lacked Probable Cause to Arrest Ms. Magana**.

Assuming counterfactually that Border Patrol agents did not break the law by stopping the vehicle without a search warrant and arresting Ms. Magana without an arrest warrant, they arrested her without probable cause. Before agents may take someone into custody without a warrant, there must be probable cause, based on the totality of the circumstances, that the person committed the crime. "[M]ere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005) (*quoting Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). "[T]he relevant inquiry is what the agents knew, collectively, at the time they arrested [the person]. Facts uncovered after the arrest are irrelevant." *Id*. at 691.

Before Ms. Magana's arrest, no one identified her as a participant in any smuggling venture. She was at most, merely present as a passenger in the vehicle. This arrest was unsupported by probable cause. All fruit of it must be suppressed. Ms. Magana asks that this

motion be granted.

**E. Discovery Motion.**

Ms. Magana moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items about which the prosecutor knows, but includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. *See generally Kyles v. Whitley,* 514 U.S. 419 (1995); *United States v. Bryan,* 868 F.2d 1032 (9th Cir. 1989).

1. The Defendant's Statements. The government must disclose to Ms. Magana *all* copies of any written or recorded statements made by Ms. Magana; the substance of any statements made by Ms. Magana that the government intends to offer in evidence at trial; any response by Ms. Magana to interrogation; the substance of any oral statements that the government intends to introduce at trial and any written summaries of Ms. Magana's oral statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings that may have been given to Ms. Magana; and any other statements by Ms. Magana. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* of Ms. Magana's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

2. Arrest Reports, Notes and Dispatch Tapes. Ms. Magana also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced *in their entirety*, be turned over to her. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Ms. Magana or any other discoverable material is contained. Ms. Magana includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROI's that the case agent or any other agent has written. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and *Brady v. Maryland,* 373 U.S. 83 (1963). *See also Loux v. United States,* 389 F.2d

911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Ms. Magana are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(I). Preservation of rough notes is requested, whether or not the government deems them discoverable.

3. *Brady* Material. Ms. Magana requests all documents, statements, agents' reports, and tangible evidence favorable to her on the issue of guilt and/or evidence that affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within *Brady's* definition of evidence favorable to the accused. *United States v. Bagley,* 473 U.S. 667 (1985); *United States v. Agurs,* 427 U.S. 97 (1976).

4. Any Information That May Result in a Lower Sentence. As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to *Brady,* 373 U.S. 83. The government must disclose any cooperation or attempted cooperation by Ms. Magana, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Ms. Magana's criminal history, or any other application of the Guidelines.

5. The Defendant's Prior Record. Evidence of a prior record is discoverable under Fed. R. Crim. P. 16(a)(1)(D). Ms. Magana specifically requests a complete copy of any criminal record.

6. Any Proposed 404(b) Evidence. Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); *see also United States v. Brooke,* 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming *Mehrmanesh* and reversing convictions).

7. Evidence Seized. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8. Request for Preservation of Evidence. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, any samples of narcotics used to run any scientific tests, **all narcotics**, the results of any fingerprint analysis, Ms. Magana's personal effects, and any evidence seized from Ms. Magana or any third party.

Ms. Magana requests that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9. *Henthorn* Material. Ms. Magana requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent (including local and state authorities) involved in the present case for impeachment material. *See Kyles v. Whitley,* 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended. Ms. Magana further requests production of any such information at least *one week* prior to the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10. Tangible Objects. Ms. Magana requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books,

papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Ms. Magana. Fed. R. Crim. P. 16(a)(1)(E). Specifically, Ms. Magana requests **color copies** of all photographs in the government's possession of the alleged narcotics.

11. Expert Witnesses. Ms. Magana requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). *See United States v. Duvall,* 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects).

Ms. Magana requests the notice of expert testimony be provided at a minimum of *six prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. *See Kumho v. Carmichael Tire Co.,* 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. Impeachment evidence. Ms. Magana requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Ms. Magana. *See* Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under *Brady,* 373 U.S. 83. *See United States v. Strifler,* 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); *Thomas v. United States,* 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

13. Evidence of Criminal Investigation of Any Government Witness. Ms. Magana requests any evidence that any prospective witness is under investigation by federal,

state or local authorities for any criminal conduct. *United States v. Chitty,* 760 F.2d 425 (2d Cir. 1985).

14. Evidence of Bias or Motive to Lie. Ms. Magana requests any evidence that any prospective government witness is biased or prejudiced against Ms. Magana, or has a motive to falsify or distort his or her testimony. *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987); *Strifler,* 851 F.2d 1197.

15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity. Ms. Magana requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. *Strifler,* 851 F.2d 1197; *Chavis v. North Carolina,* 637 F.2d 213, 224 (4th Cir. 1980).

16. Witness Addresses. Ms. Magana requests the name and last known address of each prospective government witness. *See United States v. Napue,* 834 F.2d 1311 (7th Cir. 1987); *United States v. Tucker,* 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); *United States v. Cook,* 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Ms. Magana also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness. *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984).

17. Names of Witnesses Favorable to the Defendant. Ms. Magana requests the name of any witness who made any arguably favorable statement concerning Ms. Magana or who could not identify her or who was unsure of her identity or participation in the crime charged. *Jackson v. Wainwright,* 390 F.2d 288 (5th Cir. 1968); *Chavis,* 637 F.2d at 223; *Jones v. Jago,* 575 F.2d 1164,1168 (6th Cir.1978); *Hudson v. Blackburn,* 601 F.2d 785 (5th Cir. 1979), *cert. denied,* 444 U.S. 1086 (1980).

18. Statements Relevant to tshe Defense. Ms. Magana requests disclosure of any statement that may be "relevant to any possible defense or contention" that she might assert.

*United States v. Bailleaux,* 685 F.2d 1105 (9th Cir. 1982).

19. Jencks Act Material. Ms. Magana requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2 Advance production will avoid the possibility of delay of the motion shearing or trial to allow Ms. Magana to investigate the Jencks material. Ms. Magana requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20. *Giglio* Information. Pursuant to *Giglio v. United States,* 405 U.S. 150 (1972), Ms. Magana requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21. Agreements Between the Government and Witnesses. Ms. Magana requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or tshe advice not followed.

22. Informants and Cooperating Witnesses. Ms. Magana requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Ms. Magana. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. *Roviaro v. United States,* 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants that exculpates or tends to exculpate Ms. Magana.

23. Bias by Informants or Cooperating Witnesses. Ms. Magana requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio,* 405 U.S. 150. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. Personnel Records of Government Officers Involved in the Arrest. Ms. Magana requests all citizen complaints and other related internal affairs documents involving any of the federal, state or local law enforcement officers who were involved in the investigation, search, arrest and interrogation of Ms. Magana. *See Pitchess v. Superior Court,* 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25. Training of Relevant Law Enforcement Officers. Ms. Magana requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (Immigration and Customs enforcement, Customs and Border Protection, DEA, etc.) to their employees regarding training, policies and procedures regarding the interrogation of suspects.

26. Performance Goals and Policy Awards. Ms. Magana requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by involved law enforcement agencies for commending, demoting, or promoting agents for their performance with respect to the detection and interruption of marijuana cultivation operations.

27. Opportunity to Weigh, Count, View and Photograph the Contraband. Ms. Magana hereby requests an opportunity to view, count, photograph, and weigh the contraband allegedly confiscated in this case.

28. Reports of Scientific Tests or Examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Ms. Magana requests the reports of all tests and examinations conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any

evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

29. Residual Request. Ms. Magana intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16.

Ms. Magana requests that the government provide the above requested material sufficiently in advance of trial and the next motion hearing date.

**E. This Court Should Sever Co-Defendants**

Under Fed. R. Crim. P. 8 and 14, Ms. Magana moves to sever her case from that of her co-defendants, Mr. Felix Hernandez-Chavez, Mr. Juan Jesus Limon and Mr. Hugo Montes-Martinez. Two primary reasons for severance exist: (1) Ms. Magana anticipates antagonistic defenses; and (2) Ms. Magana's co-defendants made incriminating statements which would not be admissible against Ms. Magana at trial, and arguably vice versa.

**1. Antagonistic Defenses**

The Court should sever because the co-defendants will have antagonistic and mutually exclusive defenses at trial. "Mutually exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for the conviction of the other." *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991). In *Tootick*, the Ninth Circuit noted that antagonistic defenses greatly prejudice co-defendants because (1) defense counsel becomes essentially a second prosecutor, without being bound by the limitations on prosecutors; (2) perverse incentives are created that may affect a defendant's decision to testify, position on evidentiary issues, etc.; and (3) jurors may convict both defendants rather than sort out the complexities of antagonistic defenses.

**2. Bruton Issue**

Moreover, *Bruton v. United States*, 391 U.S. 123 (1968) calls for severance. In *Bruton*, the Court held that admission of a non-testfying co-defendant's statements violate the Sixth Amendment when used against another defendant. Here, the co-defendants gave statements intending to incriminate Ms. Magana. Under *Bruton*, use of the statements at trial violates the Confrontation Clause, as she would have no opportunity to cross-examine the witnesses. For these reasons, these cases should be severed.

**F. This Court Should Sever Counts**

Under Fed. R. Crim. P. 8, both defendants have to participate in the alleged crimes to permit joinder. "Where multiple defendants are involved, Rule 8(b) requires that each count of the indictment arise out of 'the same series of acts or transactions' in which all of the defendants 'have participated.'" *Metheany v. United States*, 365 F.2d 90, 94 n.4 (9th Cir. 1966) (*quoting McElroy v. United States*, 164 U.S. 76, 80-81 (1896)). Simply put, "charges against multiple defendants may not be joined merely because they are similar in character." *United States v. Sanchez-Lopez*, 879 F.2d 541, 550 (9th Cir. 1989).

Ms. Magana and Mr. Felix Hernandez-Chavez share no common counts. They never participated in the same act or transaction. Ms. Magana was alleged to have committed a May 8, 2008 marijuana offense; Mr. Hernandez-Chavez allegedly took part in a marijuana offense in March of 2008. These distinct incidents were not part of the same series of acts or transactions. These events were distinct and separate from one another.

The Ninth Circuit Court has repeatedly articulated the "established rule prohibiting a practice of the joining in one indictment different defendants, some of whom are charged with one crime and some with another." *Methany v. United States*, 365 F.2d 90, 95 n. 5 (9th Cir. 1966). Analyzing precedent from the Supreme Court as well as the Ninth Circuit, *Metheany* confirmed that when defendants are joined in this fashion, "prejudice would result to the accused, if such practice were permitted, and that such prejudice is apparent and must be assumed." *Id*. *See also*, *Culjak v. United States*, 53 F.2d 554, 556 (9th Cir. 1931) (same) ; *McElroy v. United States*, 164 U.S. 76, 80-81 (1896) (holding that joinder of different

defendants for distinct crimes is *per se* error).

This case does not present a situation where Ms. Magana and Mr. Hernandez-Chavez shared some counts in common, but were charged with separate counts as well. Nor is it a situation where the government alleged that they committed acts together, conspired together, or indeed, that Ms. Magana knew about Mr. Hernandez-Chavez's or Mr. Hugo Montes-Martinez's crimes at all. The government simply proceeds on the theory that they were somehow ethereally affiliated. Because the counts in the indictment are wholly unrelated, this Court should sever in order to prevent undue prejudice.

### G. Joinder to Codefendant's Motions

Ms. Magana moves to join in the motions filed by codefendants for Felix Hernandez-Chavez (1), Hugo Montes-Martinez (2), and Juan Jesus Limon (3), by and through their respective attorneys of record L. Marcel Stewart, Robert H. Henssler, Jr. of Federal Defenders of San Diego, Inc., and Michael Edmund Burke, respectively.

### H. Leave to File Further Motions

Ms. Magana and defense counsel have received some discovery in this case. As new information surfaces – via discovery provided by the government, defense investigation, or an order of this court – the defense may need to file further motions, or to supplement existing motions. For this reason, defense counsel requests leave to file further motions.

## III.

## <u>CONCLUSION</u>

Ms. Magana respectfully requests that the foregoing motions be granted.

Dated: June 11, 2008

Respectfully submitted,

*s/ Timothy A. Scott*

**TIMOTHY A. SCOTT**

Attorneys for Modesta Luisa Magana

**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: timscottlaw@cox.net

Attorneys for Modesta Luisa Magana

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>Modesta Luisa Magana<br>Defendant. | ) | Case No. 08cr1166-W<br>Date: 6/24/08<br>Time: 9:00 a.m.<br>**DECLARATION OF MODESTA LUISA MAGANA** |

1. I am the named defendant in the above captioned matter.
2. I am competent to testify in this matter.
3. I write this declaration in support of my request for an evidentiary motion hearing.
4. On or about May 8, 2008, within the Southern District of California, I was unlawfully arrested and detained.
5. At some point that day, law enforcement officers employed by the United States government read me my Miranda rights.[1]
6. I told the officers that I did not wish to speak with them.[2]
7. I invoked my right to an attorney when I responded that I did not wish to speak

[1] *See Discovery*, pg. 22 at p. 17.

[2] *Id.*

with the officers.[3]

8. Even though I said I didn't want to talk, the Agent began discussing my religion with me and the need to be honest.

9. He continued to question me and discuss matters of religion and being honest.[4]

10. Anything after the agent began telling me to be honest and discussing my religion was in response to the agent's continued questions.

11. I did not type this declaration, my attorney did. However I have read it and I adopted as my own. It does not contain every fact that I know about my interrogation and arrest.

12. I respectfully request a hearing to protect my constitutional rights.

This statement is true and correct to the best of my knowledge this 10th day of JUNE, 2008.

[signature] FOR TIMOTHY A. SCOTT

**TIMOTHY A. SCOTT**

Attorneys for Ms. Modesta Luisa Magana

x [signature]

Modesta L. Magana

---

[3] *Id.*

[4] *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that I am over the age of eighteen and am not a party to this action. On today's date, I filed a true and correct copy of the attached document through this Court's Electronic Filing System (ECF), and the system indicated that the filing had been received successfully. By virtue of the ECF system, the AUSA assigned to this case and all interested parties were served electronically upon filing of this document.

I declare that the foregoing is true and correct this 11th day of June, 2008

*S/ Timothy A. Scott*

____________________

TIMOTHY A. SCOTT
Attorney at Law